### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | | |
|---|---|---|
| **ALBERT L. ALLEN,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:11-0337 |
| | ) | |
| **E.K. CAULEY, Warden,** | ) | |
| **FCI McDowell,** | ) | |
| | ) | |
| Respondents. | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending is Petitioner's Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in Federal Custody.[1] (Document No. 1.) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.) Having examined Petitioner's Section 2241 Application, the undersigned finds, and hereby respectfully recommends, that Petitioner's Application should be dismissed.

### FACTUAL AND PROCEDURAL HISTORY

On May 13, 2011, Petitioner filed his present Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in State or Federal Custody. (Document No. 1.) As grounds for claiming entitlement to relief under Section 2241, Petitioner states the USPC violated the his right to equal protection and subjected him to cruel and unusual punishment. (Id.) Petitioner explains that he was sentenced by the Superior Court of the District of Columbia on April 1, 1992, "to 20 years

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

to life for Second-Degree Murder while Armed: Possession of a Firearm during a crime of violence or dangerous offense." (Document No. 2, p. 2.) Petitioner states that he "had a Parole Rehearing held on January 14, 2010 under the D.C. 1987 Guidelines, in which that hearing examiner denied parole for not participating in a program, anger management." (Id., p. 3.) Petitioner claims that he "signed-up for [the anger management program] at FCI Gilmer in 2008, and was added to the waiting list, but he did not know that FCI Gilmer was not able to offer the program until January 14, 2010, due to a lack of available psychology staff to do the program." (Id., pp. 3 - 4.) Petitioner contends that his Case Managers informed the USPC that Petitioner was on the waiting list for the anger management program. (Id., p. 4.) Petitioner, therefore, contends that the USPC should not have denied him parole due to his failure to attend an anger management program.

First, Petitioner contends that the USPC violated his right to equal protection by denying him parole. (Id., pp. 4 - 9.) Petitioner explains that "[w]hen the Petitioner went to his parole hearing there were three other inmates guilty of violent crimes and that had a Special Parole Rehearing on January 14, 2010, with the same hearing examiner, and were seen under the same guidelines and Program Standards." (Id., p. 4.) Petitioner states that "the three inmates that went to the rehearing that day received parole from the same examiner I saw that day, which is evidence of intentional discrimination with regard to the Petitioner." (Id., p. 5.) Petitioner asserts that "this qualifies Petitioner in the range as the other three inmates who were granted parole and who get to take their anger management out in the community." (Id.) Petitioner, therefore, alleges that he has provided "details to support his argument that he was similarly situation to the parole convicts in the nature of their crimes and circumstances, but that he experienced irrational and arbitrary acts and intentional disparate treatment as compared to the other inmates." (Id. pp. 5 and 9.)

Next, Petitioner argues that the USPC subjected him to cruel and unusual punishment by

2

denying him parole. (Id., pp. 9 - 12.) Specifically, Petitioner states that "the Commissioner's granting the other three inmates parole has violated Petitioner's Eighth Amendment right to be free of cruel and unusual punishment by subjecting the Petitioner to continued imprisonment." (Id., p. 9.) Petitioner claims that he received "harsher treatment towards his conditional liberty interest than is permitted under the Eighth Amendment of the United States Constitution prohibiting cruel and unusual punishment." (Id., p. 10.) Petitioner explains that he has been a model prisoner and has "not committed a single disciplinary infraction in the 21 years he has been incarcerated." (Id., p. 11.) Petitioner further states that he "completed a 'Positive Mental Attitude Program' that deals with controlling your anger." (Id.) Finally, Petitioner states that "he has served more than the minimum sentence imposed in this case . . . [which] satisfies the need for punishment for the crime of which the prisoner has been convicted." (Id., pp. 11 - 12.) Petitioner, therefore, requests this Court to grant his immediate release from custody. (Id., p. 12.)

In support Petitioner attaches the following Exhibits: (1) Petitioner's Affidavit (Document No. 2, pp. 14 - 15.); (2) A copy of the Parole Commission's "Notice of Action" dated March 13, 2010, regarding Petitioner (Document No. 2-1, pp. 2, 16 - 17.); (3) A copy of Petitioner's Inmate Request to Staff dated May 9, 2008, requesting enrollment in the anger management program and response stating that Petitioner had "been added to the waiting list" (Id., p. 3.); (4) A copy of a letter from the USPC to Petitioner dated November 15, 2010, stating that if FCI Gilmer "will not be offering the [anger management] class between now and prior to your next reconsideration hearing in January 2013, the Bureau of Prisons has the authority to transfer you to an institution that offers such programs" (Id., p. 4.); (5) A copy of Petitioner's Inmate Request to Staff dated April 22, 2010, stating that he "would like to be enrolled in the anger management class" (Id., p. 5.); (6) A copy of a letter from Petitioner's counsel to the USPC dated January 23, 2010 (Id., pp. 6 - 8.); (7) A copy

of an e-mail communication between Case Manager L. Smith and Case Analyst Rhonda A. Moore dated December 2, 2010 (Id., p. 9.); (8) A copy of Sellmon v. Reilly, 551 F.Supp.2d 66 (D.C. Cir. 2008) (Id., pp. 11 - 14.); (9) A copy of page 1 of Inmate Stephen Grant's "Inmate Skills Development Plan" dated June 22, 2010 (Id., p. 18.); (10) A copy of the Parole Commission's "Notice of Action" dated March 18, 2010, regarding Inmate Stephen Grant (Id., pp. 19 - 20.); (11) A copy of page 1 of Inmate Andre Johnson's "Inmate Skills Development Plan" dated May 20, 2010 (Id., p. 21.); (12) A copy of the Parole Commission's "Notice of Action" dated March 7, 2010, regarding Inmate Andre Johnson (Id., pp. 19 - 20.); (13) A copy of the police report involving Inmate Montell Fields (Id., p. 24.); (14) A copy of the Parole Commission's "Notice of Action" dated March 31, 2010, regarding Inmate Montell Fields (Id., p. 25.); (15) A copy of a letter to the USPC from Darryl Corum, Manger of Painter's Plus, dated December 4, 2009, stating that upon Petitioner's release, "he will be working as a plumber or doing demolition work" (Id., p. 27.); and (16) A copy of Petitioner's Certification of Completion of the "Positive Mental Attitude Program" dated April 20, 2011 (Id., p. 28.).

On June 7, 2011, Petitioner filed a "Motion for Leave to Supplement his Habeas Corpus Pursuant to Fed. R. Civ. P. 15(a), (d), Dealing with 28 U.S.C. § 2241." (Document No. 6.) In his Motion, Petitioner states he wishes to amend his Petition to include "additional, relevant information and documentation necessary to make an informed decision on the pending motion." (Id.) Petitioner explains that he filed his Section 2241 Petition on May 12, 2011, and received a Progress Report on June 6, 2011. (Id.) As an Exhibit, Petitioner attaches a copy of his Progress Report dated November 12, 2009. (Document No. 6-1.)

## ANALYSIS

Generally, when a decision of the United States Parole Commission is challenged in *habeas*

proceedings, judicial review is limited to determining whether the USPC abused its discretion by violating a constitutional, statutory or regulatory provision. The Court, however, may not review the discretionary decision of the USPC to deny parole under an abuse of discretion standard. See Garcia v. Neagle, 660 F.2d 983, 987-89 (4th Cir. 1981)(Finding that the USPC's substantive decision setting prisoner's presumptive parole date was not subject to judicial review under an abuse of discretion standard); Page v. Pearson, 261 F.Supp.2d 528, 530 (E.D.Va. 2003)(Parole decisions are not "subject to arbitrary and capricious or abuse of discretion review under the provisions of the Administrative Procedure Act, 5 U.S.C. § 701(a)(2)). Although the Court cannot review the substance or merits of the parole decision, it can examine the decision to determine whether it violates constitutional, statutory, regulatory, or other restrictions. Id.; see also Gruber v. United States Parole Commission, 792 F.Supp. 42 (N.D.W.Va. 1992).

The Revitalization Act vested the USPC with the sole authority to administer the District of Columbia parole system on August 5, 1998. See The National Capital Revitalization and Self-Government Improvement Act, Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745, codified at District of Columbia Code § 24-131(a)(1)(2001)("Not later than one year after August 5, 1997, the United States Parole Commission shall assume the jurisdiction and authority of the Board of Parole of the District of Columbia to grant and deny parole. . .."). Thus, the USPC is responsible for making parole release decisions for all eligible District of Columbia Code felony offenders, including Petitioner. The USPC must follow the parole laws and rules of the District of Columbia as amended and supplemented by the USPC. The USPC has amended the parole rules and guidelines of the District of Columbia. See 28 C.F.R. §§ 2.80, et seq.; see also Muhammad v. Mendez, 200 F.Supp.2d 466, 469-70 (M.D. Pa. 2002). The USPC has prescribed the procedure it employs with respect to District of Columbia Code offenders at 28 C.F.R. §§ 2.70, et seq.

**1.      Equal Protection Claim.**

Petitioner alleges that the USPC violated his right to Equal Protection because the USPC granted parole to three other inmates who had not completed an anger management program. The relevant equal protection cases provide a basic three-step analysis to determine whether an inmate's right to equal protection has been violated. First, the inmate must produce evidence to show that he was treated differently than other similarly situated inmates. See Durso v. Rowe, 579 F.2d 1365, 1371 (7th Cir. 1978). Second, the inmate must show that he was intentionally singled out for harsher treatment. See Brandon v. District of Columbia Bd. of Parole (I), 734 F.2d 56, 60 (D.C. Cir. 1984); Stringer v. Rowe, 616 F.2d 993, 998 (7th Cir. 1980). Third, if the inmate was purposefully singled out, the analysis can take one of two paths. The first path is taken if the inmate can show that the prison's motivation in effecting its differential treatment implicates a suspect classification or a fundamental right. If this is established, the Court must strictly scrutinize the prison's actions. See O'Bar v. Pinion, 953 F.2d 74, 81-82. The prison must show that the classification is narrowly tailored to a compelling governmental interest. Id. If the prison's reason for the differential treatment does not implicate a suspect class or a fundamental right, the analysis takes the second path. See Brandon (I), 734 F.2d at 60, Brandon v. District of Columbia Bd. of Parole (II), 823 F.2d 644, 650 (D.C. Cir. 1987). On this path, the differential treatment is subject only to rational basis review. See O'Bar, 953 F.2d at 81-82. A rational basis review requires that the government's decision to treat similarly situated individuals differently bear some rational relationship to a legitimate State purpose. See id. at 81; Brandon (I), 734 F.2d at 60; Brandon (II), 823 F.2d at 650.

The undersigned finds that Petitioner fails to allege that a similarly situated inmate received

parole.[2] Petitioner attempts to satisfy the first step by comparing his situation to the situation of three other inmates (Inmates Grant, Johnson, and Fields), who were granted parole. Petitioner contends that he is similarly situated to Inmates Grant, Johnson, and Fields because all inmates were convicted of a violent offense and had not completed an anger management program. This example, however, is inapposite. According to Petitioner's "Notice of Action," the USPC stated as follows:

> The guidelines indicate that parole should be granted at this time. However, a departure from the guidelines at this consideration is found warranted because the Commission finds there is a reasonable probability that you would not obey the law if released and your release would endanger the public safety. You are a more serious parole risk than shown by your point score because you need additional programming to remain crime free in the community. Specifically, the Commission notes that you have participated in a very limited amount of programming since your incarceration. The commission finds that you require appropriate programming to address the underlining cause or causes of your criminal conduct to reduce the risk that you present to the community. It is recommended that you participate in Counseling Programs such as Anger Management and Victim Impact prior to your next hearing.

(Document No. 2-1, p. 16.) Unlike Petitioner's "Notice of Action," there is no indication that the

---

[2] Under the 1987 Regulations, a D.C. Code offender becomes eligible for parole after serving a minimum sentence. The USPC determines a prisoner's suitability for parole by calculating a total point score, which ranges from 1 to 5. The total point score leads to two outcomes: (1) "parole shall be granted," or (2) "parole shall be denied." At the initial parole hearing, a prisoner determined to have a total point score of 0, 1, or 2 "shall be" granted parole with varying degrees of supervision. 28 D.C.M.R. § 204.19 (1987). For a prisoner deemed to have a total point score of 3, 4, or 5 points, "[p]arole shall be denied at initial hearing and rehearing scheduled." *Id.* The total point score derived for the initial parole hearing is the starting point for subsequent reconsideration hearings. Notwithstanding the mandatory language employed by the regulations regarding whether to grant or deny parole, the 1987 Regulations suggest numerous aggravating and mitigating factors that may justify a departure from the outcome dictated by the prisoner's total point score. 28 D.C.M.R. §§ 200.1, 204.22, 205.1-4 (1987). When the USPC exercises its discretion to disregard the total point score, it need only "specify in writing the factors which is used to depart from the strict application of the provisions of [the regulations]." *Id.* § 204.22; *See Sellmon v. Reilly*, 551 F.Supp.2d 66, 89-91 (D.D.C. 2008)(noting that in practice, the D.C. Board frequently exercised its discretion to deny parole to prisoners deemed suitable by the 1987 Regulations). In the instant case, the USPC made specific findings for denying Petitioner parole, and the merits of its decision are beyond judicial review.

USPC determined (1) there was reasonable probability that Inmates Grant, Johnson, and Fields would violate the law if released, (2) that public safety would be endangered by the release of Inmates Grant, Johnson, and Fields, or (3) that Inmates Grant, Johnson, and Fields participated in a very limited amount of programming during their incarceration. (Id., pp. 19, 22, and 25.) Thus, Petitioner's conclusory allegation that he is similarly situated to Inmates Grant, Johnson, and Fields is without merit. The USPC considers many factors, such as an inmate's criminal history and acceptance of responsibility, when determining whether to grant parole.[3] The mere fact that all inmates were convicted of a violent offense and failed to take an anger management class does not make them "similarly situated." Finally, Petitioner does not allege that the decision to deny him parole was based on any suspect classification. The undersigned, therefore, finds that Petitioner has failed to state a claim for denial of equal protection of the law.

**2.     Eighth Amendment Claim.**

Plaintiff contends that the denial of parole resulted in cruel and unusual punishment prohibited under the Eighth Amendment of the United States Constitution. As a general matter, prohibited punishments under the Eighth Amendment include those which involve the "unnecessary and wanton

---

[3] In the "Evaluation" section of Petitioner's parole report, the hearing examiner noted as follows (Document No. 6-1, p. 4.):

> This examiner commends the subject for not having incurred any disciplinary infractions during the entire time he has been in custody. However, this examiner has concerns over the very limited amount of programming the subject has completed while in custody. While the subject does admit to shooting and killing his wife, the subject tends to minimize his role in the offense by stating that the problems in his marriage had to do with the fact that his wife was using drugs at the time. This examiner is particularly concerned that the subject has not chosen to participate in any Counseling Programs such as Anger Management while in custody. This examiner believes, based on the subject's limited acceptance of responsibility for his actions the subject must complete Counseling Programs to minimize the risk that he poses to the community at this time.

infliction of pain," and conditions that are "grossly disproportionate to the severity of the crime warranting imprisonment." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). The Court notes, however, that because "parole proceedings are not part of criminal prosecutions, the actions of the Commission do not constitute punishment." See Morrisey v. Brewer, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Franklin v. Reilly, 2009 WL 86550, * 3 - 4 (N.D.W.Va. Jan. 9, 2009)("[T]he fact that the Commission denied parole and departed above the guidelines does not establish that the petitioner's Eighth Amendment rights were violated.). Furthermore, Petitioner does not possess a constitutionally protected liberty interest in receiving parole. See Price v. Barry, 53 F.3d 369, 370 (D.C. Cir. 1990)(D.C. law does not create a liberty interest in parole). Accordingly, Petitioner has failed to state a claim under the Eighth Amendment.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Petitioner's Petition for Writ of *Habeas Corpus* by a Person in Federal Custody under 28 U.S.C. § 2241(Document No. 1.) and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Petitioner shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written

objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*.

Date: March 1, 2012.

R. Clarke VanDervort
United States Magistrate Judge